# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JULIA TURRENTINE,                          )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )      1:15CV00256
                                           )
CAROLYN W. COLVIN,                         )
Acting Commissioner of Social              )
Security,                                  )
                                           )
                    Defendant.             )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Julia Turrentine, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.)  The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 10, 13).  For the reasons that follow, the Court should remand this matter for further administrative proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of July 31, 2011.  (Tr. 151-54.)  Upon denial of that application initially (Tr. 59-70, 90-93), and on reconsideration (Tr. 71-85, 94-101), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 102).  Prior to the hearing,

Plaintiff amended her alleged onset date to July 12, 2013, the date on which she ended her part-time work as a certified nursing assistant. (Tr. 188, 247.) Plaintiff, her non-attorney representative, and a vocational expert ("VE") attended the hearing. (Tr. 26-58.) The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 10-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since July 12, 2013, the amended alleged onset date.

3. [Plaintiff] has the following severe impairments: degenerative joint disease/osteoarthritis of the knee and degenerative disc disease.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. [Plaintiff] has the residual functional capacity to perform sedentary work . . ., which includes sitting for 6 hours in an 8-hour workday, standing and walking for 2 hours in an 8-hour day, and lifting, carrying, pushing and pulling up to 10 pounds. [Plaintiff] is further

2

limited to occasional postural activities and no ladder
climbing.

. . .

6.  [Plaintiff] is capable of performing past relevant
work as a hospital insurance clerk.  This work does not
require the performance of work-related activities
precluded by [Plaintiff's] residual functional capacity.

. . .

7.  [Plaintiff] has not been under a disability, as
defined in the . . . Act, at any time from July 12, 2013,
through the date of this decision.

(Tr. 15-20 (internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Even given those limitations, the Court should remand this case for
further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ [underlying
the denial of benefits] if they are supported by substantial
evidence and were reached through application of the correct legal
standard."  Hines, 453 F.3d at 561 (internal brackets and quotation

3

marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based

4

upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [Supplemental Security Income] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

5

gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule"

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignment of Error

In Plaintiff's sole assignment of error, she contends that "[t]he ALJ improperly classified Plaintiff's [past relevant work ("PRW")] (Docket Entry 11 at 4), and failed to address "conflicts between occupational evidence provided by [the VE] and the

_____

(internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

information in the [Dictionary of Occupational Titles ("DOT")]," as required by Social Security Ruling 00-4p, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898708 (Dec. 4, 2000) ("SSR 00-4p") (id. at 6).  In particular, Plaintiff challenges the ALJ's classification of Plaintiff's prior job "financial care counselor" as the DOT occupation "hospital insurance clerk" and the ALJ's finding that Plaintiff could perform the hospital insurance clerk job as generally performed in the national economy.  (Id. at 5 (citing Tr. 20, 52-53, and G.P.O., DOT, No. 214.362-022, 1991 WL 671871 (4th ed. rev. 1991)).) According to Plaintiff, because the financial care counselor job entailed "walking from patient's room to patient's room in the [emergency room of a hospital] gathering information from patients" for up to six hours in a workday, the job correlates to the light level of exertion, whereas the hospital insurance clerk job qualifies as sedentary. (Id. at 6.)  Moreover, Plaintiff maintains that, in her former financial care counselor job, she did not perform any of the primary duties and skills of the hospital insurance clerk job, such as processing insurance claims, communicating with insurance companies regarding unpaid claims, and obtaining settlements of such claims.  (Id.)

Lastly, Plaintiff asserts the significance of the ALJ's error, because, had the ALJ properly categorized Plaintiff's financial

care counselor job at the light level of exertion, he would have found, based on Plaintiff's sedentary RFC, that she could not return to such work, and would have proceeded to step five of the SEP. (Id. at 7.) At that step, Plaintiff argues that, "in order to find transferability of skills to skilled sedentary work [such as the DOT hospital insurance clerk job] for individuals who are 55 and older (advanced age), 'there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry.'" (Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.00(f)).) Plaintiff contends that, given the different duties and skilled nature of the DOT hospital insurance clerk job, the Medical-Vocational Guidelines recognize that Plaintiff, aged 62 at the time of the hearing, could not have adjusted vocationally to that job, and that "a finding of disability would be appropriate under [] [R]ule 201.02 [of the Guidelines]." (Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.02).) Plaintiff's arguments have merit.

"[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if [she] is capable of performing [her] [PRW] either as [she] performed it in the past or as it is generally required by employers in the national economy." Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995). Put another way, a claimant must demonstrate "an inability to return to her previous work (i.e., occupation), and not simply to her specific prior job."

DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983). An ALJ "may rely on the general job categories of the [DOT] as presumptively applicable to a claimant's prior work," but "a claimant may overcome the presumption that the [Commissioner's] generalization applies by demonstrating that her duties were not those envisaged by the framers of the [Commissioner's] category." Id. "[T]he decision as to whether the claimant retains the functional capacity to perform past work . . . has far-reaching implications and must be developed and explained fully in the disability decision." Social Security Ruling 82-62, Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General, 1982 WL 31386, at *3 (1982).

At the hearing in this case, Plaintiff testified that, as a financial care counselor in a hospital, she "had to go to different rooms . . . in the emergency room to get . . . [patients'] demographic information; make sure their names [were] correct; [] get their insurance information . . .; and collect copayments." (Tr. 32-33.) Plaintiff further stated that she entered patients' information into a computer in between her visits with patients and at the end of her shift (see Tr. 44-45), and that she walked "back and forth" between patient rooms and the main desk "constantly all day long" (Tr. 45; see also Tr. 216 (Work History Report reflecting Plaintiff's estimate that she walked up to six hours in a 10-hour

shift)).  Plaintiff denied that her job involved "processing insurance."  (Id.)

Following Plaintiff's testimony, the ALJ called upon a VE to categorize Plaintiff's PRW.  (See Tr. 52.)  The VE indicated that she did not need any further information regarding Plaintiff's PRW (see id.), and classified Plaintiff's financial care counselor job as the DOT occupation "hospital insurance clerk," which entails "sedentary work with a [specific vocational preparation] of 5" (Tr. 53).  The VE then clarified that, as described by Plaintiff, the financial care counselor job "probably" qualified as a light exertion job.  (Id.)  In response to a hypothetical question from the ALJ, which included a limitation to sedentary work and various postural restrictions consistent with the RFC (compare Tr. 16, with, Tr. 53), the VE opined that Plaintiff could perform her PRW as generally performed in the national economy (Tr. 53).[5]

On cross-examination, Plaintiff's non-attorney representative asked the VE if Plaintiff could perform the insurance clerk job as Plaintiff actually performed the job, and the VE stated that Plaintiff could not.  (Tr. 54.)  The VE then conceded that she had not performed a job analysis on the hospital insurance clerk occupation, either as generally performed or as performed by

---

[5] Because the VE had earlier categorized another of Plaintiff's former jobs as the DOT occupation "nurse's assistant," a medium exertion job with a specific vocational preparation of 4 (Tr. 53), on cross-examination, Plaintiff's non-attorney representative elicited testimony from the VE that Plaintiff could not return to her former work as a nurse's assistant (Tr. 54).

Plaintiff. (See Tr. 55-56.) In closing argument, Plaintiff's representative asserted that Plaintiff could neither return to her prior work as a financial care counselor as she performed it, nor, due to her age, make a successful vocational adjustment to the skilled, sedentary DOT occupation of hospital insurance clerk. (Tr. 57.)

On the existing record, substantial evidence fails to support the ALJ's (and VE's) classification of Plaintiff's financial care counselor work as the DOT occupation "hospital insurance clerk." (See Tr. 20, 53.) Plaintiff's testimony established that her financial care counselor work entailed primarily walking from room to room in the emergency room of a hospital to collect insurance information and copayments from patients, and that she spent relatively little time sitting at a computer inputting such information. (Tr. 32-33, 44-45; see also Tr. 216.) In direct contrast, the DOT classifies the job of "hospital insurance clerk" as "[s]edentary [w]ork," which "involves sitting most of the time, but may involve walking or standing for brief periods of time." DOT, No. 214.362-022, 1991 WL 671871 (emphasis added).

Compounding this exertional level discrepancy, a comparison of Plaintiff's testimony about her financial care counselor work and Work History Report with the descriptive paragraph for the DOT job "hospital insurance clerk" establishes that Plaintiff did not perform most of the primary duties of that job. (Compare Tr. 32-

12

33, 44-45, 216, with DOT, No. 214.362-022, 1991 WL 671871.) As the emphasized portions of the DOT paragraph make clear, a "hospital insurance clerk":

> Verifies hospitalization insurance coverage, computes patients' benefits, and compiles itemized hospital bills; Types insurance assignment form with data, such as names of insurance company and policy holder, policy number, and physician's diagnosis. Telephones, writes, or wires insurance company to verify patient's coverage and to obtain information concerning extent of benefits. Computes total hospital bill showing amounts to be paid by insurance company and by patient, using adding or calcuulating machines. Answers patient's questions concerning statements and insurance coverage. Telephones or writes companies with unpaid insurance claims to obtain settlement of claim. Prepares forms outlining hospital expenses for governmental, welfare, and other agencies paying bill of specified patient.

(DOT, No. 214.362-022, 1991 WL 671871 (emphasis added)).

In light of this record evidence establishing significant differences between the two jobs in question, Plaintiff has met her burden to "overcome the presumption that the [ALJ's (and VE's) DOT classification of "hospital insurance clerk"] applie[d] [and has] demonstrat[ed] that her duties were not those envisaged by the framers of the [DOT's] category." DeLoatche, 715 F.2d at 151 (holding that plaintiff overcame presumption that sedentary DOT occupation "school social worker" applied to her PRW, where she presented "unrebutted" testimony of extensive walking and standing required by her PRW). In the face of Plaintiff's unrebutted vocational evidence, the failure of the ALJ (and VE) here to even address, much less explain, how he resolved material

13

inconsistencies between the financial care counselor job and the DOT hospital insurance clerk occupation constitutes reversible error. Marquez v. Colvin, No. 5:12-CV-802-FL, 2014 WL 1316113, at *4-5 (E.D.N.C. Mar. 31, 2014) (unpublished) (reversing ALJ's determination the plaintiff could perform PRW "because the ALJ failed to discuss probative evidence weighing against her decision," such as the "plaintiff's own written description of his job, which may tend to show that the job he actually performed did not properly fall under the [DOT] titles that the Commissioner had relied upon").

The Commissioner nevertheless argues that Plaintiff waived this issue on judicial review by failing to challenge the VE's classification of her PRW at the hearing before the ALJ. (See Docket Entry 14 at 7 (citing Cline v. Chater, No. 95-2076, 1996 WL 189021, at *4 (4th Cir. Apr. 19, 1996) (unpublished), and Pleasant Valley Hosp., Inc., v. Shalala, 32 F.3d 67, 70 (4th Cir. 1994)).) Indeed, some district courts have suggested that a claimant's failure to challenge the VE's classification of the claimant's prior work can result in waiver of the ability to raise such an issue on judicial review. See, e.g., Wegner v. Colvin, No. EDCV 13-0634-JPR, 2014 WL 1430955, at *10 (C.D. Cal. Apr. 14, 2014) (unpublished) ("[T]he ALJ's reliance on the VE's testimony was reasonable, especially in light of Plaintiff's failure at the hearing to object to the VE's categorization of his past work,

question the VE about her opinion regarding Plaintiff's past relevant work, or even point out the contradictory state-agency decision guide." (citing <u>Solorzano v. Astrue</u>, No. EDCV 11-369-PJW, 2012 WL 84527, at \*6 (C.D. Cal. 2012) (unpublished))).

However, the Court should find that Plaintiff sufficiently raised the issue in question before the ALJ so as to preclude any possibility of waiver.  At the hearing, Plaintiff established that she performed her financial care counselor work at the light level of exertion, and that her sedentary RFC precludes such work.  (<u>See</u> Tr. 32-33, 44-45, 53, 55.)  Moreover, Plaintiff testified that the duties of her former work as a financial care counselor primarily involved walking from room to room in the emergency room of a hospital collecting patient demographic and insurance information and copayments (<u>see</u> Tr. 32-33, 44-45), and did not involve processing insurance (<u>see</u> Tr. 45).  In closing argument, Plaintiff's representative argued that, due to Plaintiff's advanced age (62), she could not adjust vocationally to another skilled sedentary job such as the hospital insurance clerk <u>DOT</u> occupation. (<u>See</u> Tr. 57.)  Under these circumstances, waiver does not apply.[6]

In conclusion, the ALJ erred by failing to explain his classification of Plaintiff's financial care counselor work as the <u>DOT</u> occupation "hospital insurance clerk," and substantial evidence fails to support that determination.

---

[6] Plaintiff's representative reiterated these arguments in her brief to the Appeals Council.  (<u>See</u> Tr. 8-9.)

## III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be reversed, and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include reevaluation, using the services of a VE, of the proper classification of Plaintiff's PRW as a financial care counselor, and a new determination whether Plaintiff can return to her PRW, and if not, whether other jobs exist in significant numbers in the national economy that Plaintiff can perform. As a result, Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 10) should be granted to the extent it seeks remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) should be denied.


      /s/ L. Patrick Auld
      **L. Patrick Auld**
      **United States Magistrate Judge**

January 19, 2016